O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SERGIO PADILLA, | ) | Case No. CV 14-09760 DDP (JPRx) |
| | ) | |
| Plaintiff, | ) | **ORDER REMANDING TO STATE COURT** |
| | ) | |
| v. | ) | Dkt. Nos. 7, 12 |
| | ) | |
| PACIFIC BELL TELEPHONE | ) | |
| COMPANY; AT&T CALIFORNIA; | ) | |
| AT&T CORP.; AT&T | ) | |
| COMMUNICATIONS WORKERS OF | ) | |
| AMERICA AFL-CIO, CLC LOCAL | ) | |
| 9003, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

     Presently before the Court is Plaintiff's motion to remand
this case to state court under 28 U.S.C. 1447.  (Dkt. No. 12.)
Having considered the parties' submissions, the Court adopts the
following order.

**I.   BACKGROUND**

     Plaintiff worked as "Premises Technician" for Pacific Bell
("Bell") from some unknown time until 2012.  (Compl. ¶¶ 17, 23;
Decl. Sheila Bordeaux ¶¶ 3, 6.)  In September 2011, Plaintiff
suffered a back injury, resulting in a physical disability.

1  (Compl. ¶ 18; Bordeaux Decl. at ¶ 4.)  Plaintiff alleges that he
2  requested an accommodation from Bell in the form of a transfer to
3  some job he could perform in his injured condition, but was
4  refused, although "suitable jobs were available."  (Compl. ¶ 19.)
5  Plaintiff alleges that Bell did not accommodate him or engage in a
6  "good faith interactive process"; eventually, he alleges, his
7  supervisor told him to lie to his doctor to have his medical
8  restrictions removed.  (Id. at ¶ 20-21.)  Plaintiff alleges that he
9  refused to do so, after which Bell retaliated against him by
10 refusing to help him find a suitable alternative job and then
11 firing him in October 2012.  (Id. at ¶ 23.)  Plaintiff also alleges
12 that his union, Communications Workers of America, Local 9003 ("the
13 Union"), "aided and abetted" Bell's retaliatory behavior.  (Id. at
14 ¶ 25.)
15      On October 23, 2014, Plaintiff brought a complaint against
16 Defendants in California state court, alleging violations of
17 California's fair employment laws, especially the Fair Employment
18 and Housing Act ("FEHA").  (Id. generally.)  Plaintiff's complaint
19 makes no claims under federal law.  (Id.)  On December 22, 2014,
20 the Union removed to this federal district court.  (Dkt. No. 1.)
21      Plaintiff moves to remand to state court on the ground that
22 there is no federal jurisdiction.  (Dkt. No. 12.)
23 **II.  LEGAL STANDARD**
24      A defendant may remove a case from state court to federal
25 court if the case could have originally been filed in federal
26 court. 28 U.S.C. § 1441(a); see also Snow v. Ford Motor Co., 561
27 F.2d 787, 789 (9th Cir. 1977).  As the removing party, Defendant
28 bears the burden of proving federal jurisdiction. Duncan v.

1   <u>Stuetzle</u>, 76 F.3d 1480, 1485 (9th Cir. 1996); <u>see also</u> <u>Matheson v.</u>

2   <u>Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir.

3   2003).  The removal statute is strictly construed against removal

4   jurisdiction, and federal jurisdiction must be rejected if any

5   doubt exists as to the propriety of removal.  <u>Gaus v. Miles, Inc.</u>,

6   980 F.2d 564, 566 (9th Cir. 1992) (explaining that courts resolve

7   doubts as to removability in favor of remand).

8   **III. DISCUSSION**

9   **A.   Federal Labor Law and Preemption of State Law Claims**

10        Ordinarily, this Court does not have jurisdiction to hear

11  cases grounded purely in state law, unless the parties are diverse.

12  28 U.S.C. 1331-32.  "Federal question" jurisdiction normally arises

13  "only when a federal question is presented on the face of the

14  plaintiff's properly pleaded complaint."  <u>Caterpillar Inc. v.</u>

15  <u>Williams</u>, 482 U.S. 386, 392 (1987).  In essence, the plaintiff is

16  the master of her complaint and may choose whether to subject

17  herself to federal question jurisdiction by careful selection of

18  claims.  <u>Id.</u>  Additionally, if questions of federal law arise only

19  as defenses to the complaint, federal question jurisdiction does

20  *not* exist.  <u>Id.</u> at 392-93.

21        There is, however, an exception to this "well-pleaded

22  complaint" rule. "On occasion . . . the pre-emptive force of a

23  statute is so extraordinary that it converts an ordinary state

24  common-law complaint into one stating a federal claim for purposes

25  of the well-pleaded complaint rule."  <u>Id.</u> at 393 (internal

26  quotation marks omitted).  This "complete preemption" rule is

27  applied primarily in employment cases involving union member

28

3

employees, because such cases can implicate § 301 of the Labor
Management Relations Act ("LMRA").  That section provides that:

> Suits for violation of contracts between an employer and a
> labor organization representing employees in an industry
> affecting commerce as defined in this chapter, or between any
> such labor organizations, may be brought in any district court
> of the United States having jurisdiction of the parties,
> without respect to the amount in controversy or without regard
> to the citizenship of the parties.

29 U.S.C. § 185(a).

Suits asserting violations of a collective bargaining
agreement ("CBA") between a union and an employer are therefore
preempted by § 301 and provide federal question jurisdiction.  "Any
such suit is purely a creature of federal law, notwithstanding the
fact that state law would provide a cause of action in the absence
of § 301."  Franchise Tax Bd. of State of Cal. v. Constr. Laborers
Vacation Trust for S. California, 463 U.S. 1, 23 (1983).

Where the plaintiff in an employment action is a union member,
employed pursuant to a CBA, but does not base a claim directly on a
violation of the CBA, the preemption question is more nuanced.
Claims involving *interpretation* of a CBA are also considered
federal law claims, because "the policies that animate § 301"
require a uniform federal interpretation of union contracts.
Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985).
Nonetheless, "not every dispute concerning employment, or
tangentially involving a provision of a collective-bargaining
agreement, is pre-empted by § 301."  Id. at 211.  The LMRA does not
preempt claims rooted in "nonnegotiable state-law rights" that are

4

1   not "inextricably intertwined" with the interpretation of the terms
2   of a labor contract.   Id. 213.
3        These principles have been distilled by the Ninth Circuit into
4   a three-prong test:
5        In deciding whether a state law is preempted under section 301
6        . . . a court must consider: (1) whether the CBA contains
7        provisions that govern the actions giving rise to a state
8        claim, and if so, (2) whether the state has articulated a
9        standard sufficiently clear that the state claim can be
10       evaluated without considering the overlapping provisions of
11       the CBA, and (3) whether the state has shown an intent not to
12       allow its prohibition to be altered or removed by private
13       contract. A state law will be preempted only if the answer to
14       the first question is "yes," and the answer to either the
15       second or third is "no."
16  Miller v. AT & T Network Sys., 850 F.2d 543, 548 (9th Cir. 1988).
17  **B.   Section 301 Preemption of Plaintiff's Claims Against Union**
18       None of Plaintiff's claims are breach of contract claims.
19  Rather, they are allegations of disability discrimination,
20  harassment, and retaliation, actionable under FEHA and other state
21  laws.  Nonetheless, the Union contends that these claims, as to it,
22  are preempted by § 301, because "[as] Plaintiff's bargaining
23  representative, *any alleged action taken or alleged failure by the*
24  *Union* reasonably requires analysis of the CBA." (Opp'n at 6:21-22
25  (emphasis added).)  That cannot be correct – that is equivalent to
26  saying that *any* lawsuit involving a union and an employer that have
27  entered into a CBA would necessarily be removable to federal court.
28  If that were true, the Miller test would be beside the point.

1    The Union also argues, more appropriately, that "the substance

2  of Plaintiff's state law claims center around whether he was

3  improperly denied an alternative job position in light of his

4  rights under the CBA." (Id. at 6:26-28.)  The Union's Opposition,

5  however, points to no provision in the CBA requiring Bell to

6  provide alternative work for disabled workers – nor, after diligent

7  search, can the Court find any such provision.

8    Two provisions of the CBA do touch on the subject matter of

9  the FEHA claims in a limited sense.  Section 2.04(B)(1)(a) of the

10  CBA provides that certain employees, such as those returning from

11  the military or a leave of absence, will have priority when Bell

12  seeks to fill a job vacancy.  "[Q]ualified medically restricted

13  employees" are included in that list.  (Dkt. No. 1-18 at 000018.)

14  And Memorandum of Agreement 86-37 governs the *salary* of medically

15  restricted employees who are moved to different job positions.

16  Neither provision requires the employer to attempt to accommodate a

17  disabled employee, nor to engage in a good-faith interactive

18  process with the employee, as FEHA does.

19    But even assuming that those provisions satisfy the first

20  prong of the Miller test[1] – that is, assuming they actually "govern

21  the actions giving rise to [the] state claim," 850 F.2d at 548 –

22  the Union has not shown that the second and third prongs are

23  satisfied.  Nor, likely, could it.  FEHA is a clear and well-

24  established statute whose provisions apply with equal force whether

25  _____

26    [1]The Court finds even this assumption unlikely.  "Causes of
action that only tangentially involve a provision of a
27  collective-bargaining agreement are not preempted by section 301."
Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007)
28  (quoting Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748
(9th Cir. 1993)) (internal quotation marks and brackets omitted).

1   there is a collective bargaining arrangement or not, and the Ninth

2   Circuit has repeatedly held that its provisions are not subject to

3   being contracted away.[2]   The Union relies on <u>Audette v. Int'l</u>

4   <u>Longshoremen's & Warehousemen's Union</u>, in which the Ninth Circuit

5   held that workers' claims of sex discrimination and retaliation

6   were preempted by LMRA.   195 F.3d 1107, 1113 (9th Cir. 1999).   But

7   <u>Audette</u> is distinguishable, both because it applies Washington

8   rather than California law, <u>id.</u>, and because the discrimination

9   alleged in that case was in the context of enforcing a settlement

10  agreement that relied on an underlying CBA to define its terms and

11  provide for enforcement.   <u>Id.</u> at 1112.   That case therefore does

12  not upset the long line of Ninth Circuit cases concluding that FEHA

13  claims are freestanding under state law and not preempted by LMRA.

14      There is therefore no basis for concluding that § 301 preempts

15  Plaintiff's claims.

16  **C.    Preemption as to the "Duty of Fair Representation"**

17

18  _____

19      [2]<u>See</u> <u>Jimeno v. Mobil Oil Corp.</u>, 66 F.3d 1514, 1527 (9th Cir.
    1995) (detailing FEHA's "clear statutory and regulatory standards"
20  which "provide a means to determine 'reasonable accommodation'
    without reference to the CBA"); <u>id.</u> at 1528 ("[T]he California FEHA
21  is unlike the Missouri anti-discrimination provision which requires
    consideration of the employer's authority under the CBA to make
22  accommodations.   Therefore, Mobil cannot assert that the state is
    indifferent to negotiation and alteration of the right by private
23  contract . . . .") (citation omitted); <u>Ramirez v. Fox Television</u>
    <u>Station, Inc.</u>, 998 F.2d 743, 748 (9th Cir. 1993) ("[T]he rights
24  conferred by the California Employment Act are defined and enforced
    under state law without reference to the terms of any collective
25  bargaining agreement.   Actions asserting those rights are thus
    independent of collective-bargaining agreements.   These rights are
26  nonnegotiable and cannot be removed by private contract.")
    (citations omitted) (internal quotation marks omitted).   <u>See also</u>
27  <u>Cramer v. Consol. Freightways, Inc.</u>, 209 F.3d 1122, 1131-32 (9th
    Cir. 2000) (distinguishing between rights under FEHA, which are
28  non-negotiable, and the right to privacy under California law,
    which is negotiable).

The Union also argues that, independent of any possible § 301 preemption, Plaintiff's claims are preemption because they implicate the Union's "duty of fair representation," which is a matter of federal law. (Opp'n at 2-5.) Plaintiff points out that he did not plead any claim as to the duty of fair representation. (Reply at 10.)

The "duty of fair representation" is not mentioned in the LMRA statute; rather, it is a judicial creation imputing to unions a duty "to serve the interests of all members without hostility or discrimination toward any," based on the provisions of the National Labor Relations Act ("NLRA").[3] Vaca v. Sipes, 386 U.S. 171, 177, 87 S. Ct. 903, 910, 17 L. Ed. 2d 842 (1967). Although "the touchstone of the federal district court's removal jurisdiction is . . . the intent of Congress," Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987), and although the duty of fair representation is "judicially evolved" and predates Congress's passage of the LMRA, Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 79 (1989), some circuits have nonetheless found that this judicial creation preempts state law claims and provides removal jurisdiction. See Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1166-67 (5th Cir. 1989) (holding that a claim predicated solely on a union's failure to meet its duty of fair representation provided removal jurisdiction); BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.,

---

[3]The Supreme Court has never held that the NLRA can preempt state law for purposes of removal jurisdiction. Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir. 1993) (noting that the Court "has identified only two federal acts whose preemptive force" can justify federal question jurisdiction: LMRA and the Employee Retirement Income Security Act).

1   IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997) (holding

2   that state law claims against a union rooted in negligence and

3   fraud fell under the duty of fair representation and therefore

4   provided removal jurisdiction).  See also Thomas v. Nat'l Ass'n of

5   Letter Carriers, 225 F.3d 1149, 1158 (10th Cir. 2000) (holding that

6   state wrongful discharge and civil conspiracy claims fell under the

7   duty of fair representation, but not addressing removal

8   jurisdiction).  Richardson, however, dealt with a complaint that

9   specifically invoked the federal duty rather than a right under

10  state law.[4]  As to BIW Deceived and Thomas, the Court, not bound by

11  these out-of-circuit decisions, respectfully disagrees with their

12  reasoning.

13      First, as at least one other district court has found, the

14  duty is fundamentally a judicial creation and has little to say

15  about congressional intent.  Wrobbel v. Asplundh Const. Corp., 549

16  F. Supp. 2d 868, 874-75 (E.D. Mich. 2008).  Although it is read

17  into the NLRA, it is not an explicit statutory grant of

18  jurisdiction to federal courts, as § 301 of the LMRA is.  Removal

19  jurisdiction exists only where "Congress has clearly manifested an

20  intent to make causes of action . . . removable to federal court."

21  Taylor, 481 U.S. 58, 66.

22      Second, the Supreme Court has said that the rationale for

23  preemption that undergirds LMRA preemption has much less force when

24  it comes to the duty of fair representation:

25  _____

26      [4]"The duty which the Union allegedly breached is described in
    the original petition as 'a duty' which the Union had '[a]s the
27  bargaining agent for Plaintiffs' (emphasis added).  No other source
    of duty is alleged in the original petition."  Richardson v. United
28  Steelworkers of Am., 864 F.2d 1162, 1165 (5th Cir. 1989).

1    [T]he decision to pre-empt federal and state court

2    jurisdiction over a given class of cases must depend upon the

3    nature of the particular interests being asserted and the

4    effect upon the administration of national labor policies of

5    concurrent judicial and administrative remedies.

6    A primary justification for the pre-emption doctrine—the need

7    to avoid conflicting rules of substantive law in the labor

8    relations area and the desirability of leaving the development

9    of such rules to the administrative agency created by Congress

10   for that purpose—is not applicable to cases involving alleged

11   breaches of the union's duty of fair representation.

12   <u>Vaca</u>, 386 U.S. at 180-81.

13       Third, even if preemption applies in cases like <u>Richardson</u>

14   where the complaint appeals to the duty directly and does not make

15   a claim under a clear, non-negotiable state statute, applying it as

16   a blanket rule in the face of such state claims would, again, tend

17   to make <u>Miller</u> a dead letter.  If every act by a labor union so

18   profoundly implicates the duty of fair representation that state

19   law claims are completely preempted, there is no need to engage in

20   analysis as to § 301.

21       Fourth, although the Ninth Circuit has not squarely considered

22   the question yet of whether the duty of fair representation

23   completely preempts state law claims for removal purposes, its

24   precedent suggests that FEHA's provisions may not be preempted *at*

25   *all*, let alone completely.[5]  As the Circuit explained in 2008,

26   _____

27   [5]"The jurisdictional issue of whether complete preemption
     exists . . . is very different from the substantive inquiry of
28   whether a 'preemption defense' may be established."  <u>Holman v.</u>
                                                    (continued...)

1    The federal statutory duty which unions owe their members to
2    represent them fairly also displaces state law that would
3    impose duties upon unions *by virtue of their status as the*
4    *workers' exclusive collective bargaining representative . . .*
5    .  To bring a successful state law action, aggrieved workers
6    must make a showing of *additional duties, if they exist,*
7    *beyond the normal incidents of the union-employee*
8    *relationship.*  Such duties must derive from *sources other than*
9    *the union's status as its members' exclusive collective*
10   *bargaining representative . . . .*

11   Adkins v. Mireles, 526 F.3d 531, 539-40 (9th Cir. 2008) (emphases
12   added).  As the Northern District of California recently noted, in
13   a FEHA claim "[t]he duty not to discriminate arises from a source
14   other than the Union's status as its members' exclusive collective
15   bargaining representative—*i.e.*, the duty under FEHA."  Martinez v.
16   Kaiser Found. Hospitals, No. C-12-1824 EMC, 2012 WL 2598165, at *7
17   (N.D. Cal. July 5, 2012).

18       For all these reasons, the Court finds that Plaintiff's state
19   law claims are not preempted by the federal duty of fair
20   representation.

21
22
23
24   ///
25   ///
26   ///
27   _____

28       [5](...continued)
     Laulo-Rowe Agency, 994 F.2d 666, 669 (9th Cir. 1993).

**IV.   CONCLUSION**

The Court finds that it lacks jurisdiction to hear this case. The case is REMANDED to state court.  The pending motion to dismiss (Dkt. No. 7) is VACATED as moot.


IT IS SO ORDERED.


Dated: February 19, 2015

DEAN D. PREGERSON
United States District Judge

12